NOT DESIGNATED FOR PUBLICATION

No. 117,206

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RYAN MICHAEL PLATT,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed October 27, 2017. Reversed.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Jeremiah L. Platt*, of Clark & Platt, Chtd., of Manhattan, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM: The Kansas Department of Revenue asks us to reverse a district court's order lifting its administrative suspension of Ryan Michael Platt's driving privileges. The court had ruled that the arresting officer had denied Platt his right to counsel. Because Platt's answer to the officer, "I don't know," was equivocal, we hold Platt never invoked his right to counsel. Therefore, we reverse the court's order suppressing the breath test results and reverse the order lifting the suspension of Platt's driving privileges.

1

On Valentine's Day, 2016, Riley County Police Officer Jeffrey Childs stopped Platt after he saw Platt make an improper turn. After conducting some field sobriety tests, Childs arrested Platt and took him to the Riley County Law Enforcement Center. The officer read the implied consent form to Platt and he agreed to submit to a breath test. The result of the breath test was .089. Officer Childs did read Platt his *Miranda* warnings that specifically told Platt he had the right to speak to an attorney.

After the warning, the following conversation took place, which was video recorded. We offer a portion of the interview to show just how uncertain Platt was about seeking counsel:

"Officer: Were you operating a vehicle tonight?

**"Platt:** (pause) **I just don't know if I need to get a lawyer or not.** That's what, I mean.

"Officer: That's totally up to you man. You understood your rights, right, when I read them to you, okay. If you want a lawyer that's your right. Umm, you don't want to answer my questions that's your right. I'm not going to force you or coerce you to answer my questions, or anything like that. Umm, but

**"Platt: I never do this so that's why I don't know.**

"Officer: Well, that's a decision you will have to make, man. Umm.

**"Platt: I don't want to make a wrong decision.**

"Officer: Totally up to you. Let me ask you this, umm, and if you don't want to answer you don't have to answer it just like the first question. With the marijuana, what was found in the car was about 7.4 grams, and then a Colorado dispensary—

"Platt: That's where I got it, in Colorado.

"Officer: —bucket, ok. Umm, you didn't have any pipes or anything like that, right?

"Platt: (Shakes head)

"Officer: No. How do you smoke your marijuana?

"Platt: With a one-hitter.

"Officer: A one-hitter, ok. Umm, because we did not find any pipes or anything like that in your car. It's just the marijuana and that, that dispensary bottle. It's a bottle, right?

Platt: Yes sir.

"Officer: Yeah. Is that what you keep it in?

2

"Platt: (pause) It is what I keep, yeah, and I separated (unintelligible) little bag.

"Officer: OK.

"Platt: (unintelligible)

"Officer: So there's some in there and some in the bag.

"Platt: It was separated.

"Officer: And that's what Sid told me. Umm.

"Platt: You see, I, umm (unintelligible) wrong decision and say something stupid that I—

"Officer: Ryan, you seem competent to me, OK. Umm, you told me you understood your rights when I read them to you. You did understand them right?

"Platt: Yes I did.

"Officer: OK. The decision to talk to me is fully up to you, man. Like I said, I am not going to force you or coerce you to talk to me. Until you actually tell me you don't want to talk to me or that you want a lawyer present I am going to keep asking you questions. OK? Umm, now, but it's your right but that's, like I said, I can't give you--

**"Platt: I'm trusting you, you know, I am trusting you guys** (unintelligible) **I just don't want to get myself into something that--**

"Officer: I understand that man, but I, I'm not going to force you or coerce you in, but at the same time I am going to, I got, I am going to ask you these questions until you tell me otherwise. OK? And, I can't give you legal advice, I can't tell you yea or nay on a lawyer or anything like that. That's totally up to--

**"Platt: I trust you guys. I want to tell you everything, you know. I don't want to do something stupid that's going to end up getting me in big, big, big trouble. You know?**

"Officer: Well that's the decision you are going to have to make right now. OK? Umm.

**"Platt: I'll answer your questions man. I--**

"Officer: OK.

**"Platt: I have been honest and upfront the whole time. I'll continue."** (Emphasis added.)

Childs then gave Platt a notice of his driving license suspension due to failing the breath test. Later, Platt requested an administrative hearing. At that hearing, Platt argued that he was not given an opportunity to contact an attorney. The administrative hearing officer affirmed the license suspension. Platt sought judicial review.

The parties submitted this matter to the court. The video recording of the interview was played for the judge. Officer Childs and Platt both testified. The district court found that Platt had indeed requested, but was denied, counsel. Thus, the officer had violated Platt's statutory right to counsel under K.S.A. 2016 Supp. 8-1001(k)(9). As authority, the court cited *State v. Aguirre*, 301 Kan. 950, 349 P.3d 1245 (2015). The district court ordered that the results of the breath test be suppressed. The court reversed the administrative hearing officer and ordered that Platt's driving privileges be reinstated.

The material facts are undisputed in this case; thus, our review is unlimited. See *Dumler v. Kansas Dept. of Revenue,* 302 Kan. 420, 425, 354 P.3d 519 (2015).

In driving under the influence of alcohol cases, Kansas law states that a person shall be given notice that after the completion of the alcohol test, that person has the right to consult with an attorney. See K.S.A. 2016 Supp. 8-1001(k)(9). Failure to honor a request for counsel has consequences. In a driving license suspension administrative hearing, if the district court finds that the driver requested, but was denied, counsel under the statutory right to counsel in K.S.A. 2016 Supp. 8-1001(k)(9), the proper remedy is to suppress the State's test results. See *Dumler*, 302 Kan. 420, Syl. ¶ 6; *Ostmeyer v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 639, Syl., 827 P.2d 780 (1992).

Whether a person invoked his or her statutory right to counsel is analogous to the determination of whether a person invoked his or her Sixth Amendment right to counsel. See *State v. Kelly*, 14 Kan. App. 2d 182, 188-89, 786 P.2d 623 (1990). To invoke one's constitutional right to counsel, the suspect "'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" When a suspect makes a statement that is ambiguous about whether he or she is asserting the right, the interrogator may, but it is not required to, ask clarifying questions. This is an objective reasonableness test. *State v. Mattox*, 305 Kan. 1015, 1036-37, 390 P.3d 514 (2017).

4

The district court, and now Platt, relied on *Aguirre* for support. In *Aguirre*, the detective advised Aguirre of his *Miranda* rights using a written form entitled, "Advice of Rights" and subtitled, "Your Rights." The form contained a waiver statement that read, "I have read this statement of my rights and I understand what my rights are." The form advised Aguirre that even if he initially chose to answer the detective's questions, he would retain "the right to stop answering at any time." 301 Kan. at 958. During the questioning, Aguirre stated, "'This is—I guess where I, *I'm going to take my rights* and I want to turn in David to his family and I'll be back here. I mean, I would like to keep helping you guys I just want to—.'" (Emphasis added.) 301 Kan. at 960. The court held it was objectively unreasonable for the detectives not to understand that "my rights" were Aguirre's *Miranda* rights. The court held, in context, that Aguirre's use of the words "I guess" were, at most, uncertainty about the manner by which Aguirre could invoke his rights, not an equivocation about whether he really wanted to stop the questioning. Aguirre had invoked his right to stop answering questions at any time. 301 Kan. at 959-60.

The facts here are far different. Platt never affirmatively stated that he wanted an attorney. Platt did not make a statement similar to "I'm going to take my rights." Rather, he stated, "I just don't know if I need to get a lawyer or not," "I don't want to make a wrong decision," and "I don't want to do something stupid that's going to end up getting me in big, big, big trouble." Objectively, Platt was equivocal about whether he wanted to stop the questioning and invoke his right to an attorney. His statements to the officer indicated that he was thinking it over. He was in the process of making the decision about whether he wanted an attorney during the interview. Essentially, he was thinking out loud.

That is how Officer Childs understood the statements, too. Officer Childs responded that it was "totally up to you," that "[i]f you want a lawyer that's your right," and "that's a decision you will have to make." When Platt continued to mull it over,

5

Officer Childs let Platt know what he needed to do to stop the questioning—tell the officer affirmatively that he wanted an attorney. The officer stated, "Until you actually tell me you don't want to talk to me or that you want a lawyer present I am going to keep asking you questions." But Platt ultimately decided, "I'll answer your questions man . . . . I have been honest and upfront the whole time. I'll continue." Platt did not invoke his statutory right to an attorney. The officer was not required at any point to stop the questioning.

Other courts have dealt with this issue. In other cases, when a suspect has stated, "I don't know" or "I'm not sure what I want to do," our courts have held that these statements were ambiguous and not an invocation of rights. In *State v. Holmes*, 278 Kan. 603, 619, 102 P.3d 406 (2004), the court held that Holmes' statement, "'I think I'll just quit talking, I don't know'" was ambiguous. "The statement could be construed as not wanting to talk about the shooting details at that moment in the interrogation but not knowing if he should. However, Holmes' statement could also be construed as an assertion of his right to remain silent." 278 Kan. at 619. The court found that the officers followed the proper procedure by asking Holmes whether he wanted to talk about something else. 278 Kan. at 619.

In *State v. Morris*, 255 Kan. 964, 972, 880 P.2d 1244 (1994), Morris said, "'I'm not sure what I want to do'" when asked if he understood his rights. The detective did not ask for clarification. The court held that Morris' statement was not an invocation of his *Miranda* rights. The detective was not required to ask for clarification. 255 Kan. at 976.

In *State v. Kelley*, No. 110,153, 2014 WL 6909607, at *7 (Kan. App. 2014) (unpublished opinion), a detective asked Kelley what he remembered about the incident. Kelley began answering the question and then said, "'And . . . man, can I have a lawyer or something bro, I don't know. This shit, this seem kinda crazy.'" The detective responded, "'Yeah. Like we said, you can have a lawyer any time you want. . . . If you want to tell us

6

the rest of your story now without an attorney present we'll listen to you; if you want to stop right now you can. It's up to you.'" Kelley continued answering questions without again inquiring about a lawyer. The court held that Kelley did not unambiguously request counsel. "At most Kelley asked whether he could have counsel, and like in *Holmes*, he immediately added, 'I don't know.' The overall impression is one of uncertainty and ambiguity, so Detective Bye reasonably asked clarifying questions. [Citation omitted.]" 2014 WL 6909607, at \*8.

Recently in *Mattox*, the Kansas Supreme Court held that the statement, "'You all care if I get a lawyer in here?'" was not an unequivocal request to have a lawyer present. 305 Kan. at 1039. "The question, 'Do you care?' is a hallmark of equivocation. It thus left room for law enforcement to follow up and clarify whether he wanted to invoke his right to counsel and stop the interview or keep talking." 305 Kan. at 1039-40.

Here, Platt's repeated use of the phrase "I don't know" was a hallmark of equivocation. Platt did not know if he should have an attorney present and ultimately decided not to invoke his statutory right to counsel. The district court's legal conclusion that Platt had invoked his statutory right to counsel is not consistent with Kansas law and is erroneous.

Reversed.